UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NYC MEDICAL PRACTICE, P.C. d/b/a GOALS AESTHETICS & PLASTIC SURGERY and NYC MEDICAL PRACTICE IP HOLDINGS, CORP., <br><br> Plaintiffs, <br><br> v. <br><br> DAVID SHOKRIAN; DAVID SHOKRIAN, P.C. (a New York Professional Corporation); MILLENNIAL PLASTIC SURGERY, PLLC (a New York Professional Limited Liability Company); FARAI MAKONI; IRINA KHAIMOVA; EUROPEAN BEAUTY CENTER; EBC PLASTIC SURGERY; ISIS RICHARDSON; SURGERY411 (a fictitious Instagram profile); CHRISMARY RODRIGUEZ; NATASHA LOBRANO; JOHN DOES 1-50; and BUSINESS ENTITIES A-K, <br><br> Defendants. | 19-cv-162 (ARR) (RML) <br><br> **Not for electronic or print publication** <br><br> **Opinion & Order** |

ROSS, United States District Judge:

On January 9, 2019, plaintiffs, NYC Medical Practice, P.C., d/b/a Goals Aesthetics and Plastic Surgery, and NYC Medical Practice IP Holdings, Corp. ("plaintiff" or "Goals"), filed a 104-page complaint in this court. Compl., ECF No. 1. Goals, a plastic-surgery center headquartered in Kings County, New York, is claiming that defendant David Shokrian, along with his agents and associates, stole plaintiff's intellectual property and defamed plaintiff. The complaint includes 24 causes of action, including Lanham Act violations, copyright infringement, conspiracy, and defamation. *See id.* ¶¶ 145–311.

On March 22, 2019, the case was referred to mediation by Magistrate Judge Levy at the parties' request. *See* Mar. 22, 2019 Minute Entry. On April 29, 2019, plaintiff filed a motion for a temporary restraining order and preliminary injunction against defendants Isis Richardson and

1

her Instagram profile "surgery411." *See* Order to Show Cause, ECF No. 55; Lurie Decl., ECF No. 55-2; Pl.'s Mem. in Supp. Order to Show Cause, ECF No. 55-4 ("Pl.'s Br."). Plaintiff seeks an order restraining and enjoining defendants from the following activities:

1. Posting photographs alleged to be taken within Plaintiff's medical practice office;
2. Posting confidential or internal business records or communications from Plaintiff's business including, but not limited to, internal messages between Plaintiff and its employees with respect to operations or promotions;
3. Posting defamatory or other references as to Plaintiff or its agents, owners, members, principals, managers, employees or doctors pending a final adjudication of this matter to keep the status quo;
4. Making any posts attempting to dissuade individuals from seeking or obtaining services from Plaintiff or attempting or otherwise inducing any parties to cancel any appointments with Plaintiff;
5. Creating any other social media presences or profiles to perform the same conduct being barred herein;

Order to Show Cause 1–3.

It appears that plaintiff filed this motion for injunctive relief in response to Richardson's April 28, 2019 Instagram postings[1] of audio recordings between Ella Voskin, Goals' owner's wife, and Maddie Rojas, a former Goals employee. *See* Griffith Decl. ¶¶ 4–18; Lurie Decl. ¶ 14; Pl.'s Br. Richardson labels the recordings "shocking" and claims they include Ella stating that she will "never hire black people again." Lurie Decl. Ex. B, at 11, ECF No. 55-2.[2] In connection with these posts, Richardson writes that Ella is "racist." *See id.* at 11, 52. Plaintiff does not deny that Ella is one of the parties in the audio recordings. *See* Ella Decl. ¶ 6 ("The other party in the alleged discussions was [Maddie] Rojas who, until recently, was a practice manager at Goals.");

---

[1] For the purposes of this opinion, I assume that Richardson is in fact the operator of "surgery411" and "surgery411backup." *See, e.g.*, Griffith Decl. ¶¶ 8–11; Voskin Decl. ¶ 9, ECF No. 55-3.

[2] Richardson also posted screenshots of text conversations between Ella and anonymous sources in which Ella criticizes the work ethic of black employees. *See* Lurie Decl. Ex. B, at 52–53.

*see also* Lurie Decl. ¶ 14; Pl.'s Br. 6. However, plaintiff asserts that Richardson's "false and defamatory claims of racism" are causing plaintiff "reputational and financial harm." Pl.'s Br. 6.

At its core, plaintiff's claim is one of defamation. Regardless, plaintiff also alleges tortious interference and violations of N.Y. Penal Law § 250.05 (prohibiting eavesdropping) and 18 U.S.C. § 2511 (prohibiting the interception and disclosure of wire, oral, or electronic communications). *See id.* at 5–6; Lurie Decl. ¶ 14. Because plaintiff has failed to put forward any evidence demonstrating a likelihood of success on the merits, plaintiff's motion for injunctive relief is denied. Further, because the record before me "permits [me] to conclude that there is no factual dispute which must be resolved by an evidentiary hearing," I find a hearing on this matter unnecessary. *Lebron v. Armstrong*, 289 F. Supp. 2d 56, 59–60 (D. Conn. 2003); *see also Moore v. Consolidated Edison Co. of New York Inc.*, 409 F.3d 506, 512 (2d Cir. 2005) (affirming the district court's denial of an evidentiary hearing on a motion for preliminary relief when the issues could be resolved through the paper record).

## DISCUSSION

"Generally, a party seeking a preliminary injunction must establish (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Miller v. Miller*, No. 3:18-cv-01067 (JCH), 2018 WL 3574867, at *2 (D. Conn. July 25, 2018) (quoting *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)). In defamation cases, because of First Amendment concerns and the availability of adequate remedies at law, "the Second Circuit has long 'subscribed to the majority view that, absent extraordinary circumstances, injunctions should not ordinarily issue.'" *Id.* at *3 (quoting *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees*

3

*Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001)); *see also TVC Albany, Inc. v. Am. Energy Care, Inc.*, Nos. 1:12–CV–1471 (MAD/CRH), 1:12–CV–1472 (MAD/CRH), 2012 WL 5830705, at *5 (N.D.N.Y. Nov. 16, 2012).

I. **Plaintiff has not demonstrated a likelihood of success on the merits with respect to its defamation claim.**

"To state a claim for defamation under New York law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *MiMedX Grp., Inc., v. Sparrow Fund Mgmt. LP*, No. 17 Civ. 7568 (PGG), 2018 WL 4735717, at *7 (S.D.N.Y. Sept. 29, 2018) (alteration in original) (quoting *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009)). Truth is an absolute bar to a defamation claim. *See* 43A N.Y. Jur. Defamation & Privacy § 98 (2019). Further, plaintiffs, whether private or public figures, bear the burden of proving the falsity of the allegedly defamatory statements. *See id.* ("[P]laintiffs alleging defamation bear the burden of proving that the statements are false, and the inquiry only advances to the issues of whether the statements are defamatory or published with malice after their falsity is established." (citations omitted)).

Plaintiff provides no evidence that Richardson's statements about the audio recordings are false. Rather, in describing the recordings, plaintiff simply attempts to shift the blame for any offensive statements from Ella to Maddie. *See* Lurie Decl. ¶ 14 (noting that "[the] employee is advising to not hire black people and [Ella is] joining in the gripe conversation"); Pl.'s Br. 6 ("[Maddie] is 'egging' the other individual on and making comments about the work ethic of certain African American women."); Ella Decl. ¶ 7 ("Maddie, who has told me that she was both African American and Hispanic, makes innumerable comments on the recordings making

4

derogatory comments about other African Americans."). This blame-shifting does not indicate falsity—plaintiff has provided no evidence that Ella did not make the statements in the audio recordings or that Ella's statements were not racist. Thus, plaintiff has not demonstrated any likelihood of meeting its burden, and any injunctive relief related to its defamation claim is therefore improper.[3]

**II.     Plaintiff has not demonstrated a likelihood of success on the merits with respect to its tortious interference claim.**

"[T]ortious interference with prospective customer relations requires that the plaintiff show: '(1) [that] it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" *In re Document Tech. Litig.*, 275 F. Supp. 3d 454, 461 (S.D.N.Y. 2017) (quoting *American Bldg. Maintenance Co. of New York v. Acme Property Servs., Inc.*, 515 F. Supp. 2d 298, 316 (N.D.N.Y. 2007)).

Plaintiff's tortious interference claim rests entirely on its defamation claim. *See, e.g.*, Pl.'s Br. 5 (arguing that it has shown likelihood of success on the merits with respect to its tortious interference claim because "tagging innumerable partners and others with the false and defamatory claims of racism, etc." demonstrates "an intent to cause reputational and financial harm"). As discussed above, plaintiff has provided no evidence that defendants' statements were dishonest. Accordingly, plaintiff has failed to demonstrate a likelihood of success on the merits

---

[3] Plaintiff also makes general allegations of defamation not directly related to the audio recordings. *See, e.g.*, Lurie Decl. ¶ 2; Pl.'s Br. 4 ("All that is requested is to have these Defendants stop posting defamatory (or questionably defamatory) posts about Plaintiffs and/or Plaintiff's trade secrets . . . ."). Because plaintiff has provided no evidence demonstrating the false nature of the statements made by Richardson, plaintiff's request for injunctive relief is denied.

(or a sufficiently serious question going to the merits) with respect to its tortious interference claim.

### III. Plaintiff has not demonstrated a likelihood of success on the merits with respect to its eavesdropping and wiretapping claims.

Plaintiff also alleges violations of state eavesdropping and federal wiretapping law on the grounds that "no active participant [in the audio recordings] appears to be the individual making the recordings." Pl.'s Br. 6. As plaintiff concedes, a statutory violation could only have occurred if neither party to the conversation was the party recording the conversation. *See id.* at 7; *see also* 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."); *People v. Powers*, 839 N.Y.S.2d 865, 866 (App. Div. 2007) (noting that "[a] recorded conversation does not constitute the crime of eavesdropping" under New York law where "it has been obtained with the consent" of either party).

Here, plaintiff has provided a declaration by Ella Voskin stating that she did not record the conversation or consent to it being recorded. *See* Ella Decl. ¶ 5. Plaintiff, however, provides no evidence that Maddie did not record the conversation, which is the most likely explanation for how it came to be. *See, e.g.*, Pl.s' Br. 7 ("The only party who [could have recorded the conversation] is Ms. Rojas though we do not believe so."); Ella Decl. ¶ 8 ("I do not have reason to believe that Maddie recorded any conversations . . . ."). Thus, plaintiff has failed to show a likelihood of success on its eavesdropping or wiretapping claims. Further, plaintiff's request for relief in relation to these alleged statutory violations—i.e., that the issue "be referred to the U.S.

Attorney's Office" (Pl.'s Br. 6)—is unrelated to its claim for injunctive relief and is not an appropriate request for this court.

**CONCLUSION**

For the reasons stated in this opinion, plaintiff's request for preliminary injunctive relief is denied without a hearing.[4]

SO ORDERED.

Date: May 1, 2019
Brooklyn, New York

_____/s/_____
Allyne R. Ross

---

[4] Because plaintiff's supplemental letters (ECF Nos. 56–57) contain no legal bases for granting injunctive relief, I do not address them.