UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
NYC MEDICAL PRACTICE, P.C. d/b/a
GOALS AESTHETICS & PLASTIC
SURGERY and NYC MEDICAL
PRACTICE IP HOLDINGS, CORP.,

              Plaintiffs,                           MEMORANDUM
                                                     AND ORDER
   -against-                                      19 CV 162 (RPK)(RML)

DAVID SHOKRIAN; DAVID SHOKRIAN
P.C. (a New York Professional Corporation);
MILLENNIAL PLASTIC SURGERY, PLLC;
(a New York Professional Limited Liability
Company); FARAI MAKONI; IRINA
KHAIMOVA; EUROPEAN BEAUTY
CENTER; EBC PLASTIC SURGERY; ISIS
RICHARDSON; SURGERY 411 (a fictitious
Instagram profile); CHRISMARY
RODRIGUEZ; NATASHA LOBRANO;
JOHN DOES 1-50; and BUSINESS
ENTITIES A-K,

              Defendants.
-------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Defendant Isis Richardson ("Richardson") moves to quash a subpoena served on Instagram, Inc. ("Instagram"), a third party, by plaintiffs NYC Medical Practice P.C., d/b/a Goals Aesthetics and Plastic Surgery, and NYC Medical Practice IP Holdings Corp. ("plaintiffs"). I heard oral argument on October 1, 2019 and subsequently requested additional information from Richardson. (See Transcript of Hearing, dated Oct. 1, 2019 ("Tr."), Dkt. No. 83; Minute Entry, dated Oct. 9, 2019.) For the reasons explained below, Richardson's motion is granted.

## BACKGROUND AND FACTS

Plaintiffs commenced this action on January 9, 2019, asserting twenty-three federal and state causes of action against eleven defendants. (See Complaint, dated Jan. 8, 2019, Dkt. No. 1.) Relevant to the instant motion is plaintiffs' claim that Richardson defamed them through content posted on the Instagram profile "Surgery411."[1] (See id. ¶¶ 79-88.) On September 10, 2019, plaintiffs served a subpoena on Instagram seeking information pertaining to four accounts that they believe are linked to Richardson: (1) Surgery411, (2) Simplyice, (3) Surgery411backup, and (4) Silkroyalty.[2] (Plaintiffs' Opposition to Motion to Quash, dated Sept. 29, 2019 ("Pls.' Opp."), Dkt. No. 81.) As to each account, plaintiffs request "[d]ocuments showing all permissible subscriber information" from December 7, 2018 to the present, including the following:

   a. The email address associated with the profile;
   b. The IP address or addresses used between December 7, 2018 and present day to log into the profile;
   c. The names and email addresses associated with any and all "administrator" users or profiles;
   d. The names and dates of all direct communications between each Instagram profile identified and all other individuals from December 7, 2018 to present day;
   e. All "direct message" information, including but not limited to the sender, the receiver, and the date of all correspondences.

---

[1] Early in this litigation, Richardson denied being the operator of Surgery411, though her more recent filings and testimony appear to admit that, at a minimum, she founded and has written for Surgery411. (See, e.g., Motion to Quash, dated Sept. 27, 2019, Dkt. No. 77, at 3 ("Ms. Richardson has written articles [for Surgery411] based on confidential source information[.]"); Affidavit of Isis Richardson, sworn to Oct. 25, 2019 ("Richardson Aff."), Dkt. No. 89, at 1 ("I started Surgery411 in 2015 via the social media platform Instagram.").)

[2] Of the four subpoenaed accounts, only Silkroyalty remains active as of this writing. Richardson has opened a new account, "surgery411gangmain," which appears to be virtually identical to the original Surgery411 account. Since Instagram may still hold the metadata plaintiffs seek, I find that the deletion of these accounts has not mooted Richardson's motion.

(Instagram Subpoena, annexed as Ex. A to Pls.' Opp, at 4-5.) On September 27, 2019, Richardson, who is representing herself in this litigation, moved to quash the subpoena, citing the journalist's privilege. (See Motion to Quash, dated Sept. 27, 2019 ("Mot. to Quash"), Dkt. No. 77.) She claims to have written posts for Surgery411 based on information received from confidential sources, whose identities she seeks to protect.[3] (Id. at 3-4.) I stayed the subpoena pending a ruling on Richardson's motion and plaintiffs agreed to hold without review any documents received prior to my ruling.[4] (See Order, dated Sept. 28, 2019; Letter of Joshua M. Lurie, Esq., dated Sept. 28, 2019, Dkt. No. 80.)

## DISCUSSION

The threshold issue presented by this motion is whether Richardson has standing to quash a subpoena served on a third party—Instagram. "A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege or a proprietary interest in the subpoenaed matter." United States v. Nachamie, 91 F. Supp. 2d 552, 558 (S.D.N.Y. 2000). Standing has also been found where the movant "has a sufficient privacy interest in the confidentiality of the records sought." ADL, LLC v. Tirakian, No. 06 CV 5076, 2007 WL 1834517, at *2 (E.D.N.Y. June 26, 2007); see also Solow v. Conseco, Inc., No. 06 CV 5988, 2008 WL 190340, at *3 (S.D.N.Y. Jan. 18, 2008) ("While Rule 45 speaks of objections to subpoenas being asserted by the person commanded to produce and permit inspection of the subpoenaed documents, it is well-established that a party with a real interest in the documents

---

[3] While the subpoenaed information would not necessarily reveal the legal names of the individuals who communicated with Surgery411, it would reveal their Instagram usernames. (See Tr. at 24:16-25:9.) This would be identifying in cases where the individual uses his or her legal name as part of his or her Instagram username.

[4] I reserved judgment on Richardson's motion pending other motion practice in this case, including plaintiffs' motion to amend the complaint. I issued an Order and Report and Recommendation on that motion on June 16, 2020.

has standing to raise objections to their production. . . . Thus, courts have recognized that parties with a privacy interest in subpoenaed documents have standing to oppose the subpoena."). In this case, Richardson seeks to invoke the journalist's privilege in order to establish standing with respect to Surgery411 and the related account Surgery411backup.[5]

Both the Second Circuit and the state of New York recognize a form of journalist's privilege. See Gonzales v. Nat'l Broad. Co., 194 F.3d 29, 32 (2d Cir. 1999) ("This circuit has long recognized the existence of a qualified privilege for journalistic information."); New York Shield Law (the "Shield Law"), N.Y. CIVIL RIGHTS LAW § 79–h, et seq. "[A]sserted privileges in actions that raise both federal and pendent state law claims are governed by the principles of federal law," though the court may also consider the applicable state law and the policies that underlie it. In re McCray, Richardson, Santana, Wise, and Salaam Litig., 928 F. Supp. 2d 748, 753 (S.D.N.Y. 2013) (citing FED. R. EVID. 501); accord von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 141 (2d Cir. 1987); Schoolcraft v. City of New York, No. 10 CV 6005, 2014 WL 1621480, at *4 (S.D.N.Y. Apr. 22, 2014); Persky v. Yeshiva Univ., No. 01 CV 5278, 2002 WL 31769704, at *2 (S.D.N.Y. Dec. 10, 2002). Courts have found that the policies underlying the state and federal articulations of the journalist's privilege are "congruent." See In re McCray, 928 F. Supp. 2d at 753 (quoting von Bulow, 811 F.2d at 144); Schoolcraft, 2014 WL 1621480, at *4. Since the complaint in this case raises both federal and state law claims, the laws of the Second Circuit govern Richardson's motion.[6]

---

[5] According to Richardson, she created Surgery411backup in 2019 in order to preserve the content posted on the main Surgery411 page, in the event that posts were flagged for removal. (See Richardson Aff. at 3.)

[6] I further note that, while the discovery plaintiffs seek is most obviously relevant to the defamation claim, plaintiffs' counsel indicated at the July 15, 2020 status conference that the information they seek could also be used to support current or future claims under the Racketeer

(Continued . . . )

In the Second Circuit, a journalist has a "qualified evidentiary privilege for information gathered in a journalistic investigation." Chevron Corp. v. Berlinger, 629 F.3d 297, 306 (2d Cir. 2011); see also Gonzales, 194 F.3d at 32; In re Petroleum Prods. Antitrust Litig., 680 F.2d 5, 7-8 (2d Cir. 1982); Baker v. F & F Inv., 470 F.2d 778, 782-83 (2d Cir. 1972). There is some debate as to whether this privilege is derived from the First Amendment or from federal common law.[7] See Gonzales, 194 F.3d at 35 n.6; Schiller v. City of New York, 245 F.R.D. 112, 118 (S.D.N.Y. 2007); Mandal v. City of New York, No. 02 CV 1234, 2004 WL 2375817, at *3 (S.D.N.Y. Oct. 21, 2004). Regardless, the privilege arises from "concern for the potential harm to the 'paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters.'" Gonzales, 194 F.3d at 33 (quoting Baker, 470 F.2d at 782).

Whether an individual qualifies as a "journalist" for the purpose of invoking the privilege is determined based on intent and activity. See von Bulow, 811 F.2d at 142; see also Clay Calvert, *And You Call Yourself a Journalist?: Wrestling with a Definition of "Journalist" in the Law*, 103 DICKINSON L. REV. 411, 419 (1999) (describing the von Bulow test as having "two prongs--an activity element and an intention element."). The individual claiming the privilege bears the burden of "demonstrat[ing], through competent evidence, the intent to use material—sought, gathered or received—to disseminate information to the public and that such

---

Influenced and Corrupt Organizations Act ("RICO"). This court previously recommended the denial of a motion to amend to add a RICO extortion claim on the basis that the claim was against Richardson alone and a single person may not constitute an association-in-fact enterprise. (See Report and Recommendation, dated June 16, 2020, Dkt. No. 100, at 5-7.) Plaintiffs' counsel indicated that the subpoenaed information could be used as the basis for a second motion to amend to add this claim. The information sought is, therefore, potentially relevant to both federal and state law claims.

[7] Without making any findings as to the origins of the privilege, I will refer to it herein as the "First Amendment privilege" for ease.

5

intent existed at the inception of the newsgathering process." von Bulow, 811 F.2d at 144. Accordingly, "an individual successfully may assert the journalist's privilege if he [or she] is involved in activities traditionally associated with the gathering and dissemination of news, even though he [or she] may not ordinarily be a member of the institutionalized press." Id. at 142. The individual claiming the privilege must additionally establish the independence of his or her journalistic process. See Berlinger, 629 F.3d at 309-10.[8]

Surgery411 is an Instagram page started by Richardson in 2015, which posts reviews and other information pertaining to the various players in the plastic surgery industry, including both doctors and "recovery houses."[9] (Richardson Aff. at 1.) According to her sworn affidavit, Richardson's motivation for creating the page was her own negative experience with a recovery house after traveling to undergo a procedure. (Id.) After determining that there was

---

[8] Long before the advent of social media, a handful of district courts interpreted von Bulow to require the proponent of the privilege to be "professionally engaged in newsgathering." See In re Pan Am Corp., 161 B.R. 577, 580 (S.D.N.Y. 1993); Don King Prods., Inc. v. Douglas, 131 F.R.D. 421, 424 (S.D.N.Y. 1990). I respectfully disagree with this interpretation, especially in light of changes to the way news is gathered and disseminated in our current landscape. von Bulow is clear that "protection from disclosure may be sought by one not traditionally associated with the institutionalized press" and that "the talisman invoking the journalist's privilege is intent to disseminate to the public at the time the gathering of information commences." 811 F.2d at 144-145. The von Bulow test is a functional one and I read it to apply to any individual who engages in activities traditionally associated with newsgathering and who does so with the requisite intent at inception. Berlinger adds the requirement that the proponent of the privilege establish his or her independence. 629 F.3d at 309-310. I read neither case to exclude amateurs who otherwise meet these requirements. By way of example, multiple courts have held the privilege to apply to student journalists. See, e.g., Persky, 2002 WL 31769704, at *2 n.1 (distinguishing between the federal privilege, which does not require that the proponent be a professional journalist, and the Shield Law, which does); Blum v. Schlegel, 150 F.R.D. 42, 45 (W.D.N.Y. 1993) (noting that "whether a person is a professional journalist is irrelevant" in applying the federal privilege).

[9] Per Richardson's affidavit, a recovery house is a business that employs nurses and other staff to care for plastic surgery patients following their procedures. (Richardson Aff. at 1.) They appear to operate primarily in connection with medical tourism. (See id.)

6

little information available on the Internet as to the quality of these service providers, she "decided to create a source of free reliable information to prevent patients from being hurt[.]" (Id.) Richardson describes herself as a "watchdog," holding the industry accountable and helping lower and middle income women access information about the safety and reputation of service providers prior to undergoing a procedure.[10] (Tr. at 16:19-24; Richardson Aff. at 2.)

Reviews are submitted to Richardson on the promise of confidentiality and are frequently posted anonymously. (Richardson Aff. at 1-2; Tr. at 14:22-15:3, 17:1-4.) Before posting a review, Richardson requests that the reviewer submit a receipt so that she can verify that the reviewer actually received a service from the individual or entity that is the subject of the review. (Richardson Aff. at 2.) Providers may not pay to have negative reviews removed. (Id.) Richardson has additionally partnered with doctors providing safe and reliable services, who make themselves available to answer patient questions on the platform. (Id.)

On these facts, I have no trouble concluding that Richardson has met the intent prong of the von Bulow test with respect to Surgery411 and Surgery411backup. Her sworn testimony establishes that she founded and maintains Surgery411 for the express purpose of gathering and disseminating information to the public, in order to protect people from unscrupulous doctors and recovery houses. Accordingly, I find that she had the requisite intent, at the requisite time.

It is a closer question whether Richardson is involved in the types of "activities traditionally associated with the gathering and dissemination of news." von Bulow, 811 F.2d at 142. Richardson has alternately described Surgery411 as a blog and as a review site, akin to

---

[10] Plaintiffs, for their part, take a very different view of what Richardson does, describing her as "at best, an amateur muckraker or gossiping individual," who operates a "gripe page." (See Pl.'s Opp. at 5.)

Yelp or Google Reviews. (See Mot. to Quash at 3; Richardson Aff. at 3.) In some cases, the reviews posted on Surgery411 are merely screenshots of text messages or Instagram direct messages written by a third party—the reviewer. See Surgery411gangmain (@surgery411 gangmain), INSTAGRAM, https://www.instagram.com/surgery411gangmain/?hl=en (last visited Aug. 20, 2020). On the other hand, many of the posts do contain commentary and there is evidence that Richardson exercises some degree of editorial discretion over what appears on the site through her verification process. In this way, Surgery411 is different from a site like Yelp, which simply provides a platform for user-created content with little moderation, and is more akin to a blog. [11] Regardless of the analogy Richardson chooses to describe what she does, I find that she is serving an informative function akin to that of the press, insofar as she has created a platform that she uses to collect and publish information for public consumption, and thus has met the activity prong of the vonBulow test.

In Berlinger, the most recent Second Circuit case to clarify the definition of "journalist," the court rejected documentary filmmaker Joe Berlinger's claim of privilege where the evidence showed that he had been solicited by the lead counsel in a high-profile class action "to create a documentary of the litigation from the perspective of his clients" and had "removed at least one scene from the final version of [the film] at their direction." 629 F.3d at 305. In rejecting Berlinger's claim of privilege, the court explained that:

> [w]hile freedom of speech and of the press belongs to virtually anyone who intends to publish anything (with a few narrow exceptions), all those who intend to publish do not share an equal

---

[11] Richardson's chosen medium—Instagram—is furthermore irrelevant to the analysis. See von Bulow, 811 F.2d at 144 ("The intended manner of dissemination may be by newspaper, magazine, book, public or private broadcast medium, handbill or the like, for '[t]he press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion.'") (quoting Lovell v. Griffin, 303 U.S. 444, 452 (1938)).

8

> entitlement to the press privilege from compelled disclosure. Those who gather and publish information because they have been commissioned to publish in order to serve the objectives of others who have a stake in the subject of the reporting are not acting as an independent press. Those who do not retain independence as to what they will publish but are subservient to the objectives of others who have a stake in what will be published have either a weaker privilege or none at all.

Id. at 307-08. Thus, in evaluating an individual's activities to determine whether he or she may invoke the privilege, the court must ask not only whether the individual is acting in the role of the press (and doing so with the requisite intent, at the requisite time), but also whether he or she is acting in "the role of the *independent* press." Id. at 307.

In this case, there is no evidence that Richardson has been solicited or commissioned to advance a particular point of view in the way that Berlinger had been. While the reviews posted on Surgery411 are, of course, from the perspective of patients, this is not in itself disqualifying. There is no evidence that Richardson is paid to publish posts from a particular perspective or that she removes content at the direction of anyone else. To the contrary, there is evidence that she has a policy against removing negative posts for pay.[12] (See Richardson Aff. at 2.) Accordingly, I find that the concerns regarding independence that were at issue in Berlinger are not present here and that Richardson has presented sufficient indicia of independence to avail herself of the privilege.

This motion raises novel issues regarding the application of the journalist's privilege in the Internet age. Though the court could find no precedent contemplating these precise facts, two cases from other jurisdictions prove instructive. In Blumenthal v. Drudge, the

---

[12] The fact that she has partnered with doctors (Richardson Aff. at 2) is further evidence that she is not simply the mouthpiece of the disgruntled customer, but rather that she has sought to include a variety of perspectives from within the industry.

9

District of D.C. held that Matt Drudge, the operator of the online gossip column "The Drudge Report," could invoke the First Amendment privilege in order to protect the identities of the sources of allegedly defamatory information he had posted. 186 F.R.D. 236, 244 (D.D.C. 1999). Similarly, in O'Grady v. Superior Court, a case involving the alleged misappropriation of Apple's trade secrets, the California Court of Appeal reversed the denial of a protective order in favor of the operators of various "online news magazines" dedicated to Apple products. 44 Cal. Rptr. 3d 72, 76-77 (Cal. Ct. App. 2006). In analyzing the applicability of the First Amendment privilege to the website operators, the court explained:

> we can see no sustainable basis to distinguish petitioners from the reporters, editors, and publishers who provide news to the public through traditional print and broadcast media. It is established without contradiction that they gather, select, and prepare, for purposes of publication to a mass audience, information about current events of interest and concern to that audience.

Id. at 106.

While the law in this Circuit is clear that the privilege does not apply to all those who intend to publish, it is simultaneously clear that the privilege is not limited to members of the credentialed press. See Berlinger, 629 F.3d at 307; von Bulow, 811 F.2d at 142. Instead, the test in this Circuit is a functional one, permitting an individual to avail him or herself of the privilege where he or she is acting in a role akin to that of the independent press and doing so with the requisite intent at inception. See id. I hold, on the facts of this case, that Richardson meets these requirements with respect to Surgery411 and Surgery411backup. Plaintiffs have presented no compelling arguments to the contrary, resting solely on the argument that Richardson may not avail herself of the Shield Law because she is not a professional journalist.

(See Pls.' Opp. at 4-6.) Indeed, plaintiffs have failed to address the First Amendment privilege in their briefing at all.[13]

My holding that Richardson may invoke the journalist's privilege with respect to Surgery411 and Surgery411backup does not bring an end to the analysis, as the First Amendment privilege is not absolute and may be overcome by plaintiffs. The showing necessary to overcome the privilege depends on whether the information sought is confidential or non-confidential, with a more stringent standard applying in the former scenario. If the information is confidential, the opponent of the privilege must make a clear and specific showing that the information is (1) highly material and relevant; (2) necessary or critical to the maintenance of the claim; and (3) not obtainable from other available sources. Petroleum Prods., 680 F.2d at 7. If the information is non-confidential, the opponent of the privilege need only show that the materials are (1) of likely relevance to a significant issue in the case and (2) not reasonably obtainable from other available sources. Gonzales, 194 F.3d at 36. The proponent of the privilege carries the burden of demonstrating that the information was conveyed in confidence. See Berlinger, 629 F.3d at 310.

In this case, Richardson has stated in her sworn affidavit that reviews are submitted on the promise of confidentiality and that many of her sources would not submit

---

[13] Richardson, for her part, cites to both the First Amendment and the Shield Law as forming the basis of the privilege she seeks to invoke. (See Mot. to Quash.) Unlike plaintiffs, however, Richardson is *pro se*. The Second Circuit has instructed that *pro se* litigants are to be afforded "special solicitude," Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010), and their submissions are to be "construed liberally and interpreted to raise the strongest arguments that they suggest," Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis removed) (citations and internal quotation marks omitted). In this case, I find that Richardson's briefing clearly suggests an argument that she should be considered a journalist eligible to invoke some form of the journalist's privilege. I decline to penalize a *pro se* defendant for failing to identify with specificity which body of privilege law should apply.

reviews if they believed their identities would be revealed.  (Richardson Aff. at 1-2)  I therefore find that Richardson has established the confidentiality of the information sought and that the more stringent standard set forth in Petroleum Products applies.  Because plaintiffs have not briefed the First Amendment privilege, let alone the issue of whether it has been overcome, I find that they have not met their burden under this standard.  Accordingly, Richardson's motion to quash is granted as to Surgery411 and Surgery411backup.

        The other two accounts that are the subject of plaintiffs' subpoena, Simplyice and Silkroyalty, do not appear to have any connection to Richardson's journalistic activities on Surgery411—Simplyice is a personal account that Richardson opened in 2013, when she was an undergraduate, and Silkroyalty is an account dedicated to beauty and hair products.[14]  (See Richardson Aff. at 3-4.)  While the journalist's privilege does not apply to these accounts, I find that Richardson has a sufficient privacy interest in the metadata pertaining to her personal communications on these accounts to confer standing.[15]  See Solow, 2008 WL 190340, at *4 (finding standing based on "the personal and sensitive nature of the information sought").

---

[14] The court has viewed Silkroyalty and notes that it does not, on its face, contain any references to Surgery411.  See Silkroyalty (@silkroyalty), INSTAGRAM, https://www.instagram.com/silkroyalty/ (last visited Aug. 20, 2020).  As discussed above, Simplyice does not appear to be an active account any longer; therefore the court was unable to view it.

[15] Even if standing to quash did not exist, the court has an obligation to limit irrelevant discovery and may do so *sua sponte*.  See FED. R. CIV. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."); FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"); see also Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975) (where standing had not been established, upholding trial court's order quashing a third party subpoena because the

(Continued . . . )

Having determined that standing exists, the court must "weigh[] the relevance or probative value of the documents being sought against the privacy interest[] [Richardson] has asserted." Id. In this case, the information sought has virtually no relevance to the claims at hand. Plaintiffs' subpoena seeks information as to whom Richardson communicated with and when on accounts with no relation to Surgery411.[16] This is a textbook example of a fishing expedition. Not only is the request invasive and disproportionate to the needs of the case, but plaintiffs make no attempt to explain the information's relevance, other than by reference to the fact that the accounts are each connected to Richardson. (See Pl.'s Mem. at 3); see also Pratt v. Indian River Cent. Sch. Dist., No. 09 CV 411, 2012 WL 13172929, at *3 (N.D.N.Y. Dec. 13, 2012) ("In the first instance, the party seeking discovery bears the burden to establish relevance."). Accordingly, I find that the relevance of the information is outweighed by Richardson's interest in privacy as to her personal communications on accounts unrelated to Surgery411. Richardson's motion to quash as to Simplyice and Silkroyalty is therefore granted.

---

information sought "had no relevance to the main issues in the case"); Kiobel v. Royal Dutch Petroleum Co., No. 02 CV 7618, 2009 WL 1810104, at *5 n.10 (S.D.N.Y. June 25, 2009) ("[A] court *must* limit discovery *sua sponte* if the court determines that the discovery meets any of the Rule 26(b)(2)(C) criteria." (emphases in original)).

[16] As discussed above, plaintiffs seek, inter alia, "[t]he names and dates of all direct communications between each Instagram profile identified and all other individuals from December 7, 2018 to present day" and "[a]ll 'direct message' information, including but not limited to the sender, the receiver, and the date of all correspondences." (See Instagram Subpoena, at 4-5.) While this information may not, in each instance, reveal the legal name of the individual with whom Richardson communicated, it would reveal his or her Instagram username. (See Tr. at 24:16-25:9.) This would be identifying where the individual uses his or her legal name as part of his or her Instagram username, as many Instagram users do.

13

## CONCLUSION

For the reasons stated above, Richardson's motion to quash is granted as to all four subpoenaed Instagram accounts. The parties are directed to submit a proposed joint schedule for completing discovery within fourteen days of the date of this Memorandum and Order.

SO ORDERED.

Dated: Brooklyn, New York
August 25, 2020

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge